Tor Ekeland (NY Bar No. 4493631)
Tor Ekeland, PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
Tel: (718) 737-7264
Fax: (718) 504-5417
tor@torekeland.com

Mark Jaffe (NY Bar No. 4492310)
TorMark Law, LLP
2120 University Ave # 228
Berkeley, CA 94704
Tel: (415) 770-0398
Fax: (718) 504-5417
mark@tormarklaw.com

*Attorneys for Plaintiff*
HELLO I AM ELLIOT, INC.,

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HELLO I AM ELLIOT, INC., | Civil Action No._____ |
| Plaintiff, | |
| v. | **JURY TRIAL AND** |
| DEREK J. SINE, VANDER HOLDINGS, LLC, VANDER GLOBAL, LLC, and VANDER GROUP, LLC. | **PERMANENT INJUNCTION** |
| | **DEMANDED** |
| Defendants. | |

**COMPLAINT**

Plaintiff Hello I Am Elliot, Inc. ("Plaintiff" or "Elliot, Inc."), for its complaint against the above-named defendants ("Defendants"), alleges as follows:

1

**Introduction**

1. In 2017, Plaintiff Hello I Am Elliot, Inc. ("Elliot, Inc.") entered into a Referral Affiliate Agreement with Defendant Derek Sine, through Sine's company Vander Group, LLC, to market the Hello I am Elliot, Inc.'s unique e-commerce platform called Elliot. Unable to fulfill his obligations, and angry over his ex-girlfriend's restraining order and litigation against him, Sine inexplicably linked the two and sought revenge on Elliot, Inc. by directly targeting its investors with defamatory statements and false claims of ownership. Sine did so under the false belief that Hello I Am Elliot, Inc. was funding Sine's ex-girlfriend's litigation against him. But Hello I Am Elliot, Inc. is not funding Sine's ex-girlfriend's litigation against him, and no one from Hello I Am Elliot, Inc. has ever met Sine's ex-girlfriend.

2. Since late 2017, Sine has publicly claimed the Elliot software as his own as well as the ELLIOT trademark as his own, despite having no rights to either, and has refused demands from Hello I Am Elliot's lawyers to cease and desist.

3. Instead, Sine contacted Hello I Am Elliot's investors falsely claiming that Hello I Am Elliot misused its funds to finance his ex-girlfriend's domestic violence action against him, and making other false claims related to the company's use of funds.

4. Sine's motivation for his misbehavior has three purposes: First, he aims to lure investors away from Elliot, Inc. and thwart its legitimate business operations by means of deceit and misrepresentation; Second, he seeks to encourage these investors to invest his own company by falsely claiming the Elliot software and ELLIOT trademark as his own; and third, to avenge his ex-girlfriend based on his unfounded belief that Hello I Am Elliot is involved in her lawsuit against him. Sine has individually, and through the companies he controls, infringed, defamed, and harassed Plaintiff.

5.     All of Sine's misbehavior causes Hello I Am Elliot, Inc. irreparable harm.

## The Parties

6.     Plaintiff is a Delaware corporation, whose principal place of business is in New York, New York.

7.     Defendant Derek Sine is a natural person who, upon information and belief, resides in New York, New York and is a Managing Director of Vander Holdings LLC, Vander Global LLC, and Vander Group LLC.

8.     Defendant Vander Holdings, LLC. ("Vander Holdings") is a Nevada LLC, with a principal place of business in New York, New York. Upon information and belief, Plaintiff believes that Sine conducted its business with Plaintiff through this business.

9.     Defendant Vander Global LLC, ("Vander Global") is a Nevada LLC, with a principal place of business in New York, New York. Upon information and belief, Plaintiff believes that Sine conducted its business with Plaintiff through this business.

10.    Defendant Vander Group LLC ("Vander Group"), through Defendant Sine, entered into an agreement with Plaintiff Elliot, Inc. as relevant to this Complaint. However, Plaintiff's counsel's investigation reflects no company by that name registered in either Nevada or New York State.

## Jurisdiction and Venue

11.    The facts of this action give rise to trademark infringement claims under the Lanham Act, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), claims for a declaratory judgment of ownership of software copyrights, under the Declaratory Judgment Act, 28 U.S.C. § 2201, and tort claims under New York State law.

12. This Court has subject matter jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1338, as the claims are federal questions under the Lanham Act.

13. For the claims brought under the laws of New York State, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over each of the Defendants. Each of the Defendants reside in the territorial confines of the Southern District of New York ("S.D.N.Y."), or, in the case of the corporate Defendants, has its principal place of business within the territorial confines of the S.D.N.Y. Moreover, each Defendant has submitted to jurisdiction in the S.D.N.Y. through the actions alleged herein.

15. Venue is proper in the S.D.N.Y. under 28 U.S.C. §§ 1391(b) and 1400(a) because the Defendants reside and/or conduct business in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTS

### Villasenor Creates Elliot

16. In January 2017, Sergio Villasenor ("Villasenor") conceived, designed, and coded the e-commerce platform Elliot.

17. Elliot is global e-commerce platform that enables merchants to seamlessly sell globally across multiple platforms.

18. Villasenor is the CEO of Elliot, Inc. He founded Elliot, Inc. to market and operate Elliot.

19. By April 2017, Elliot was operational.

20. In 2017, the intellectual property rights for Elliot, including software copyrights and the ELLIOT trademark, were held by Studio86 LLC ("Studio86"). Villasenor is the sole member of Studio86.

21. In August 2017, through an Assignment and Transfer Agreement, Studio86 transferred all intellectual property in technology, product, and platform to Elliot, Inc.

22. Elliot, Inc. has hosted and operated the Elliot platform consistently since July 2017.

23. Elliot, Inc. has used the ELLIOT trademark in commerce in connection with the Elliot platform since March 2017.

### Vander International

24. On March 22, 2017, Villasenor met Defendant Sine. Sine was then the Managing Director of Vander Group, LLC, a provider of e-commerce software and services. Over a phone call they discussed Studio86 and Vander Group collaborating.

25. On May 18, 2017, Villasenor and Sine, along with two other persons, incorporated Vander International Corp. ("Vander International") in Delaware.

26. Villasenor was the President and a Director of Vander International.

27. Sine was the Vice President and a Director of Vander International.

28. After incorporating Vander International, Villasenor learned that Sine had misrepresented the Vander Group's value and resources.

29. Additionally, on June 23, 2017, Villasenor received an email from Sine's ex-girlfriend's mother. The email detailed Sine's stalking and harassment of his ex-girlfriend. The mother informed Villasenor that her daughter had obtained a protective order against Sine, but

needed Sine's address to serve the order, and asked Villasenor if he had Sine's address. This was the first time Villasenor learned of Sine's ex-girlfriend's lawsuit against him.

30. Vander International conducted business for only two months following incorporation, until July 2017. Then it was dormant until its formal dissolution in 2019.

31. On April 17, 2019, Vander International formally dissolved. No Studio86 assets were ever assigned to Vander International. Vander International had no assets at the time of dissolution and hadn't been operating as a business for roughly two years.

### The Referral Affiliate Agreement Between Elliot, Inc. and Vander Group

32. On August 1, 2017, Elliot, Inc. and "Vander Group, a Nevada based LLC" entered into a Referral Affiliate Agreement ("Affiliate Agreement") outlining the terms and conditions through which Vander Group would "cooperate with Elliot, from time to time, to plan co-marketing events and activities as mutually agreeable, designed to produce new leads and opportunities for Elliot products and services."

33. The Affiliate Agreement granted Vander Group a nonexclusive, non-transferrable, and revocable limited license to Elliot, Inc.'s "trade names, trademarks, service marks, 'd/b/a's, names, URLs, or logos" for purposes of fulfilling the Affiliate Agreement.

34. The Affiliate Agreement prohibits use of the ELLIOT trademark in a way that would "deceive others, create a likelihood of confusion or destroy or diminish the goodwill" of the ELLIOT trademark. Nothing in the Affiliate Agreement gave Defendants Sine or Vander Group the right to claim the ELLIOT trademark or its products as their own.

35. The Affiliate Agreement assigns no other rights for ELLIOT to Vander Group besides one for the limited marketing purpose discussed above. Accordingly, Elliot, Inc. never gave Sine or Vander Group access to Elliot's computer code.

36. The Affiliate Agreement constituted the entire scope of Elliot, Inc.'s business relationship with Vander Group, which was only for Vander Group to market Elliot.

**Defendants' Trademark Infringement and Plaintiff's Copyright Ownership**

37. Defendant Sine falsely claimed Elliot, Inc.'s software and trademarks as his own, to lure investors away from Elliot, Inc. and towards Sine's own companies.

38. On June 8, 2017, Vander Group's Instagram posted the ELLIOT trademark with a caption claiming ownership of the Elliot software: "Have you gotten a chance to discuss our software Elliot with our team at #irce17 yet? If not, be sure to schedule a meeting before we head to New York!" (Found at https://www.instagram.com/p/BVFcKn7jMR2/.)

39. On or about July 20, 2017, Sine created a webpage called "Say Hello to Elliot. Your Passport to Global Commerce," accompanied by the "Vander" logo. (Found at https://vander.co/say-hello-to-elliot-your-passport-to-global-commerce/.) It is unclear if the use of "Vander" refers to Vander Holdings, Vander Global, or Vander Group.

40. On the website, Sine falsely claims that the Elliot platform, as well as the ELLIOT trademark, belongs to him. "Today, I'm pleased to announce the Beta release of Elliot, our proprietary Omnichannel syndication software…"

41. On July 23, 2019, a visit to the website confirmed it's still falsely claiming Elliot, Inc's intellectual property.

42. Sine and Vander Group have no rights to use the ELLIOT trademark as their own, nor do they have rights to the underlying software created by Villasenor and owned by Elliot, Inc.

43. Plaintiff owns the code for the Elliot software, and Defendants have no access to it. Nor do they have the technical skill necessary to create the code or recreate the software.

44. Yet, Defendants' webpage falsely claims the ELLIOT trademark, and the software, as its own:

45.



46.

47. No reasonable consumer or investor would know from Vander's page that Vander was merely a contractor hired to market the Elliot platform. Rather, the page misrepresents that Vander Group created and owns the underlying software for the Elliot platform, as well as the ELLIOT trademark.

48. Upon information and belief, Sine is intentionally misleading potential investors in Elliot, Inc. into investing in Sine's companies instead by falsely claiming creation and ownership of the Elliot platform.

49. On September 6, 2017, Elliot, Inc's counsel sent a Cease and Desist letter to Sine, demanding that he halt his infringing use of the ELLIOT trademark and his claims to the Elliot software. Sine refused to comply.

## Defendants' Defamatory Statements

50. On December 1, 2017, the New York County Family Court entered a Protective Order against Defendant Sine in favor of his ex-girlfriend

51. Seeking revenge on Elliot, Inc. in the mistaken belief it was funding his ex-girlfriend's protective order against him, and to lure investors away from Elliot, Inc. and towards his own sham companies, Sine sent a number of defamatory emails and texts to Elliot, Inc.'s investors. These emails falsely accuse Plaintiff of defrauding investors, theft of company money, and frivolous litigation.

52. On May 22, 2019, Sine sent an email to JS, a former employee and current shareholder of Elliot, Inc., claiming that "Sergio [Villasenor] sued me multiples [sic] times after I invested in Elliot." This statement is false. Villasenor didn't sue Sine.

53. On June 4, 2019, Sine's ex-girlfriend's legal counsel contacted Villasenor as part of their investigation of Sine. This was Villasenor's first contact with the ex-girlfriend's legal counsel.

54. In a June 9, 2019 email to MC at Acceleprise, an investor of Elliot, Inc. and an observer on the board of Elliot, Inc., Sine falsely claimed that Villasenor and Elliot, Inc. were working with a financial sponsor funding Sine's ex-girlfriend's lawsuit against Sine. Sine further claimed that "Sergio/Brittany . . . put their full support behind [Sine's ex-girlfriend] in public and private. . . ." Sine also wrote that:

> Sergio [Villasenor] partnered up with [Sine's ex-girlfriend] . . .
> offering [] a rushed settlement in December 20th of 2017 . . . . This

> was all rushed prior to the seed announcement January 15th, 2018
> to clear the cap table and define our relationship with Elliot . . . .

Sine additionally claimed that he was "wiped off the cap table in the process and a narrative was sold that [Sine] threatened to kill Sergio [Villasenor], blackmailed him and was generally a horrible person to fall in line with the accusations [Sine's ex-girlfriend] made." In the same email he also falsely claimed that he "financed Elliot's early stage development." All of these statements are false. Neither Villasenor nor Elliot, Inc. funded Sine's ex-girlfriend's lawsuits, nor were they aware of any financial backers. Sine had never been on Elliot, Inc.'s cap table. The relationships between Elliot, Inc. and Vander Group, Elliot, Inc. and Sine, and Villasenor and Sine, fell apart because of Sine's and Vander Group's misrepresentations, infringements, and defamation.

55. In a June 10, 2019 email to Elliot, Inc. investor Acceleprise, Sine falsely claimed that Villasenor "pivoted the business burning $900k in the process." He added that Villasenor and Elliot, Inc. "misappropriated investor funds breaking the corporate veil to wipe [Sine] out of the company and/or tarnish [Sine's] reputation," and that he "was facing multiple felony charges over these false allegations."

56. In a June 11, 2019 email to Acceleprise, Sine reiterated the false accusation that "Sergio/Brittany/Elliot worked hand in hand with the opposing party who is now trying to vacate their civil lawsuit." Again, neither Villasenor nor Elliot, Inc. ever worked with anyone to financially support such a lawsuit against Sine.

57. In a June 12, 2019 email to an investor, Sine wrote "I believe to the best of my abilities that funds were misappropriated given the timeline of events."

58. In another June 12, 2019 email to Acceleprise, Sine again falsely claimed that Villasenor "has continued to lie to me and time and time again and . . . he'll threaten litigation and attempt to sue [Sine] with [Acceleprise's] capital."

59. On June 20, 2019, undersigned counsel sent a Cease and Desist letter to Sine, demanding he stop his infringement of Plaintiff's intellectual property and cease his defamatory statements.

60. On July 19, 2019, in an email to undersigned counsel Tor Ekeland, Sine copied Elliot, Inc. investors Acceleprise, Bowery Capital, and Susa Ventures. Sine falsely asserted that Villasenor has been misappropriating Elliot investor capital to "bully" Sine and attempt to "knock [Sine] off and paint [Sine] as some monster for quite some time to cover [Villasenor's] tracks."

61. In that same email, Sine made the false claim to Elliot, Inc. investors that "[Villasenor] purposely gave [Sine] an incorrect address where hasn't worked out for months and has been evading service for nearly a month now." Villasenor had provided Sine with a valid address, 33 Irving Place, New York, NY, 10003, which was the Elliot, Inc. headquarters from June 2018 through June 2019.

62. In that same email, Sine made the false claims to Elliot, Inc. investors that:

> [Villasenor] financed and/or played a role in a malicious #MeToo hoax over the last two years . . . yet in private and public he befriended my ex-girlfriend, the guy she had an affair with and maliciously assisted her counsel well after I was under the impression we both moved on and has continued to slander my name in an attempt to knock me off professionally and personally. Ironically, both Sergio [Villasenor] and my ex-girlfriend ran out of cash at the same time and it's on record an outside financier footed Ms. Goldberg's [Sine's ex-girlfriend's lawyer] "fixer fee" against me. My ex-girlfriend couldn't find a guarantor let alone pay rent in NYC yet miraculously has the cash at the same time she befriended [Villasenor].

As of the filing date, Villasenor, nor Elliot, Inc., has never met Sine's ex-girlfriend, nor financed her lawsuit against Sine.

63. In that same email, Sine made the false claims to Elliot, Inc. investors that Villasenor "is an unethical pathological liar and ultimately a conman."

64. By copying investors on his July 19, 2019 email to undersigned counsel for Elliot, Inc., Sine additionally made Elliot, Inc. investors aware of previous correspondence dated June 20, 2019 between Sine and counsel for Elliot, Inc. By making Elliot, Inc. investors aware of this correspondence and the false statements in this correspondence, Sine has further defamed Elliot, Inc. Specifically, Sine wrote:

> Your client syndicated malicious court documents to my employees and partners before I had access to them. During this time your client was gaslighting me and tried to claim I threatened his life and was trying to kill him as well. Your client has tried to pay me off in the past and has threatened me multiple times with lawyers threatening to sue me masked through frivolous trademark claims . . . . Sergio wired me back an investment "interest-free" in which he tried to a reverse wire claiming wire fraud and then tried to pay me off with investor capital on behalf of Elliot prior to announcing the seed round . . . .
>
> I have a timeline and statement of facts that match up perfectly with my ex-girlfriend's litigation. I have good cause to believe your client played a role. Heck, he's added her on LinkedIn, promoted her startup and got behind this hoax within my professional community. Sergio never met my ex-girlfriend or engaged with her during our partnership.

While the parties did engage in confidential settlement discussions, Villasenor did not otherwise try to pay Sine off. The referenced wire transaction was a personal loan from Sine, not an investment in Elliot, Inc. The personal loan was wired back to Sine after he refused to stop

infringing Elliot, Inc.'s intellectual property. To be clear, Sine was never an investor in Elliot, Inc.

65.     As of the date of this filing, on AngelList, Sine repeats his false claims that he is an investor in, Elliot, Inc.:



(Found at https://angel.co/dereksine.)

66.     Sine's angry, fraudulent, and defamatory statements damaged Elliot, Inc.'s reputation with investors.

67.     Defendants have acted willfully and with full knowledge of Elliot, Inc.'s right to the ELLIOT trademark and the copyright to the Elliot software, with the intention of deceiving customers and detracting investors from Elliot, Inc.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT – FALSE DESIGNATION OF ORIGIN LANHAM ACT § 43(A), 15 U.S.C. § 1125(S)**
**Against Derek Sine and Vander Group**

68.     Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

69.     The ELLIOT trademark is uniquely associated with Elliot, Inc. and its proprietary software.

70. Defendants' use of the ELLIOT trademark is likely to cause confusion, and to cause mistake, and deceive consumers and investors as to the origin, source, and sponsorship of Defendants' services. It creates the false impression that Defendants are the creators, users, and owners of the ELLIOT trademark, or that they are otherwise authorized to use the ELLIOT trademark to designate their own services.

71. Defendants have acted willfully and with full knowledge of Elliot Inc's right to the ELLIOT trademark, with the intention of deceiving customers and detracting investors from Elliot, Inc.

72. Therefore, Defendants are using a false designation of origin and description in violation of Lanham Act Section 43(a), 15 U.S.C. §1125(a).

73. By using the ELLIOT trademark as their own in a manner intended to mislead customers and investors, Defendants are causing substantial irreparable harm to Elliot, Inc., and will continue to damage Elliot, Inc. unless enjoined by this Court.

74. Elliot, Inc. is also damaged in an amount not yet ascertained and has no adequate remedy at law.

75. As a result, Plaintiff is entitled to an award of actual damages suffered, including Plaintiff's actual losses, an engorgement of Defendants' profits, and attorney's fees and costs under 15 U.S.C. §1125(c)(2), and other such damages the Court finds appropriate.

76. Furthermore, Plaintiff is entitled to a permanent injunction to prevent further infringement by these Defendants and further irreparable harm to himself.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT – COPYRIGHT
**Against Derek Sine and Vander Group**

77.   Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

78.   Villasenor, CEO of Elliot, Inc. originated and created the code underlying the software of the Elliot platform.

79.   The copyright to the code underlying this software was first transferred to Studio 86 LLC, and then transferred to Hello I Am Elliot, Inc.

80.   Hello I Am Elliot, Inc. is the sole owner of the copyright to the code underlying the software of the Elliot platform.

81.   None of the Defendants have access to the code underlying the software of the Elliot platform.

82.   None of the Defendants have the technical expertise to create, utilize, or manipulate the code underlying the software of the Elliot platform.

83.   There is a real and actual controversy between Plaintiff and Defendants regarding whether the code underlying the software of the Elliot platform referenced on a webpage created by Defendants Sine and Vander Group (https://vander.co/say-hello-to-elliot-your-passport-to-global-commerce/) belong to Hello I Am Elliot, Inc. or Vander Group LLC.

84.   Upon information and belief, Defendants' conduct has forced Plaintiff to assert its copyright ownership of the code underlying the software of the Elliot platform and assure its Board, current and potential investors, current and potential customers, and current and potential business partners of copyright ownership of the code underlying the Elliot software. The

controversy between Plaintiff and Defendants is thus real and substantial and demand specific relief through a decree of a conclusive character.

85. Plaintiff is entitled to a declaratory judgment that it is the sole owner of the copyright of the code underlying the software of the Elliot platform referenced on the following webpage that Defendants created: https://vander.co/say-hello-to-elliot-your-passport-to-global-commerce/.

## THIRD CAUSE OF ACTION
### DEFAMATION PER SE (NEW YORK STATE)
### Against Derek Sine

86. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

87. Defendant made false statements, as detailed above, about Plaintiff.

88. Defendant published his false statements to third parties, as particularly detailed above.

89. Defendant's publication was without privilege or authorization.

90. Defendant's false statements were intended to injure Plaintiff's trade, business and profession, and thus constitute defamation per se under New York State law. Damages are presumed.

## FOURTH CAUSE OF ACTION
### TORTIOUS INTEREFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### Against All Defendants

91. Plaintiff incorporates the above paragraphs by reference, as though fully set forth herein.

92. Plaintiff had a reasonable expectations of prospective business relations with current investors who may be continuing and future investors.

93. Defendants were aware of prospective business relationships between Elliot, Inc., and its investors.

94. As detailed with particularity above, Sine made false accusations to Plaintiff's investors with the intent of damaging Plaintiff's future business relations with these investors.

95. Sine's statements damaged Plaintiff's relationship with its investors.

## JURY TRIAL DEMANDED

96. Plaintiff requests a trial by jury as provided by the Seventh Amendment to the United States Constitution.

## REQUEST FOR RELIEF

Plaintiff requests the following relief from the Defendants, jointly and severally:

a) A judgment from this Court that the Defendants have knowingly and intentionally infringed Plaintiff's trademark

b) An accounting to determine Defendants' profits resulting from the infringement, and a judgment that these profits shall be paid to Hello I Am Elliot, Inc, under 15 U.S.C. 1117(a).

c) A Declaration of ownership by Hello I Am Elliot, Inc, of all the Intellectual Property relating to Elliot.

d) Special Damages for the Defamation *per se* claim

e) Actual damages on all the claims

f) Consequential damages on all the claims

g) Punitive damages on all claims

h) An award of attorneys' fees and costs, under 15 U.S.C. 1117(a) and as otherwise authorized or permitted by law

i)  A permanent injunction that enjoins:

    a.  The Defendants from further tortious conduct directed at Hello I Am Elliot, Inc., or its investors, officers, directors, members, employees, affiliates or agents

    b.  The Defendants, their agents, employees, successors and assigns from infringing the ELLIOT trademark, in any variation, or in any way that is likely to confuse; from registering or attempting to register the ELLIOT trademark, or any variation

    c.  The Defendants to remove all uses of the ELLIOT trademark from their websites, promotional and sales material, and any other uses that are likely to confuse as to the source and ownership of the ELLIOT trademark.

    d.  The Defendants from claiming ownership of any of Elliot, Inc.'s copyrights or trademarks, including the Elliot platform and the ELLIOT trademark

    e.  The Defendants from infringing on any of Elliot, Inc.'s copyrights, including the Elliot platform

    j)       Plaintiff be awarded prejudgment and post-judgment interest.

    k)       Such further relief as this Court deems just and equitable.

Respectfully submitted,

Date:  July 24, 2019

<u>/s/ Tor Ekeland</u>
Tor Ekeland (NY Bar No. 4493631)
Tor Ekeland, PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
Tel:  (718) 737-7264
Fax: (718) 504-5417
tor@torekeland.com

Mark Jaffe (NY Bar No. 4492310)
TorMark Law LLP
2120 University Ave. #228
Berkeley, CA 94556
Tel: 415-770-0398
Fax: 718.504.5417
mark@tormarklaw.com

*Attorneys for Plaintiff Hello I am Elliot, Inc.*