UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HELLO I AM ELLIOT, INC., AND SERGIO
VILLASENOR,

19 Civ. 6905 (PAE)

                              Plaintiff,

              -v-                                          OPINION & ORDER

DEREK J. SINE, VANDER HOLDINGS LLC,
VANDER GLOBAL, LLC, and VANDER GROUP,
LLC,

                              Defendants.

---

PAUL A. ENGELMAYER, District Judge:

Defendants Derek J. Sine ("Sine"), Vander Holdings LLC, Vander Global, LLC, and

Vander Group, LLC (together, the "Vander Entities") apply here for attorneys' fees incurred in

winning the dismissal of this trademark and copyright action brought by plaintiffs Hello I Am

Elliot, Inc. ("Hello I Am Elliot") and Sergio Villasenor ("Villasenor"), Hello I Am Elliot's Chief

Executive Officer.  For the reasons that follow, the Court denies the fee application.

## I.      Background

The Court assumes familiarity with the case's background and history, as set forth in the

decision granting the motion to dismiss.  *See Hello I Am Elliot v. Sine*, No. 19 Civ. 6905 (PAE),

2020 WL 3619505 (S.D.N.Y. July 2, 2020) ("*Elliot I*").  The following facts are most relevant to

the instant motion.

A.      **Factual Background**[1]

In January 2017, Villasenor founded Hello I Am Elliot, a startup with a global e-commerce platform called "Elliot." AC ¶¶ 23, 27. Elliot connects merchants to a global marketplace to sell and ship products across multiple platforms. *See id.* ¶¶ 24, 26. By March 2017, Hello I Am Elliot was consistently using the "ELLIOT" mark in connection with the Elliot platform. *See id.* ¶¶ 25, 34–35.

On March 22, 2017, Villasenor met Sine, managing director of Vander Group, another e-commerce company. *Id.* ¶ 39. The two discussed collaborating and together formed Vander International Corp. *Id.* ¶ 40. Vander International Corp. conducted active business for only two months, between May and July 2017. *Id.* ¶ 45. During this period, and at least up through the filing of the AC, Sine and the Vander Entities made several posts using the ELLIOT mark. *See id.* ¶¶ 54–58.

On August 1, 2017, Hello I Am Elliot and Vander Group entered into a referral affiliate agreement (the "Affiliate Agreement"), the only agreement between the companies. *See id.* ¶¶ 48, 52. In relevant part, the Affiliate Agreement prohibited Vander Group from using the ELLIOT mark in a way that would "deceive others, create a likelihood of confusion or destroy or diminish [the mark's] goodwill." *Id.* ¶ 50. The Affiliate Agreement did not grant Vander Group or Sine the right to claim ownership of the Elliot platform or the ELLIOT mark. *Id.* The Vander Entities and Sine never had access to the Elliot software, or the skills to recreate the code. *Id.* ¶¶ 51, 60.

---

[1] The Court incorporates by reference the background set forth in *Elliot I*, 2020 WL 3619505, at *1–6. The Court also draws upon on the Amended Complaint, Dkt. 27 ("AC"), and the briefs on the instant motion, Dkts. 59 ("Def. Fees Mem."), 63 ("Pl. Fees Opp'n"), 64 ("Def. Fees Reply").

Plaintiffs alleged that in summer 2019, Sine sent emails to shareholders and employees of Hello I Am Elliot claiming that Villasenor was involved in litigation between Sine and Sine's ex-girlfriend, Kathryn Kosmides ("Kosmides"). These emails, plaintiffs alleged, contained false and defamatory statements making use of the ELLIOT mark. *See id.* ¶¶ 67–69, 72–73, 76, 78–83. On September 6, 2017 and June 20, 2019, Hello I Am Elliot sent Sine and the Vander Entities cease-and-desist letters demanding that they stop infringing on its trademark and copyright. *Id.* ¶¶ 63–64, 77.

### B.      Procedural History

On July 24, 2019, plaintiffs filed their initial complaint. Dkt. 1. On November 1, 2019, defendants filed a motion to dismiss. Dkts. 22–25. On November 4, 2019, the Court instructed plaintiffs to either amend their complaint or oppose the motion. Dkt. 26.

On November 22, 2019, plaintiffs filed an amended complaint. *See* AC. On December 13, 2019, defendants moved to dismiss. Dkts. 28–31. On December 27, 2019, plaintiffs filed an opposition. Dkt. 32. On January 10, 2020, defendants filed a reply. Dkt. 35. On January 22, 2020, plaintiffs moved for a preliminary injunction. Dkt. 39. On February 14, 2020, defendants filed an opposition. Dkts. 46–49. On February 28, 2020, plaintiffs filed a reply. Dkt. 50.

On July 2, 2020, the Court granted the motion to dismiss, dismissing the two federal claims—for trademark infringement and a declaratory judgment as to copyright ownership—and declining to exercise jurisdiction over plaintiffs' state law claims, for defamation and tortious interference. *Elliot I*, 2020 WL 3619505, at *6–12. The Court dismissed the AC without prejudice, granting plaintiffs leave to amend these claims by July 16, 2020. *Id.* at *16. The Court also denied the motion for a preliminary injunction, with prejudice. *Id.* at *12–16.

On July 23, 2020, after plaintiffs did not file a second amended complaint, the Court

issued an order directing the Clerk of Court to close the case.  Dkt. 52.  On August 5, 2020, the

Court entered judgment dismissing the federal claims with prejudice, and dismissing the state-

law claims without prejudice to plaintiffs' right to pursue them in state court.  Dkt. 55.

On August 7, 2020, defendants filed a motion for attorney fees.  On August 21, 2020,

plaintiffs filed an opposition.  On August 28, 2020, defendants filed a reply.

### C.        Summary of the Decision Dismissing Plaintiffs' Claims

Because the decision dismissing plaintiffs' claims is important background to the instant

fees motion, the Court summarizes it here.

The Court dismissed plaintiffs' trademark-infringement claim for failing to allege that the

ELLIOT mark is protectable under the Lanham Act.  *Elliot I*, 2020 WL 3619505, at *6.  Because

the mark was, at the time, unregistered,[2] the Court assessed the mark's distinctiveness.  *See id.*

at *7.  The Second Circuit having held that names are generally descriptive, *815 Tonawanda St.*

*Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988), the Court held that, because the AC

did not allege that the mark referred to something other than a common first name, the mark was

descriptive, *see Elliot I*, 2020 WL 3619505, at *7–8.  Descriptive marks are protectable "only if

they are shown to have acquired secondary meaning to consumers."  *Einhorn v. Mergatroyd*

*Prods.*, 426 F. Supp. 2d 189, 195 (S.D.N.Y.  April 12, 2006).  The Court found that the AC did

not allege facts necessary to support secondary meaning.  *Elliot I*, 2020 WL 3619505, at *8–10.

But, given the fact-intensive quality of a secondary-meaning analysis, the Court gave plaintiffs

two weeks to amend the AC to fortify their pleading on this point.  *Id.* at *10.

---

[2] On January 11, 2021, plaintiffs filed a registration certificate for the ELLIOT mark dated
December 29, 2020.  Dkt. 67-1 ("Registration").

The Court also dismissed plaintiffs' claim for a declaratory judgment that Hello I Am Elliot was the sole owner of the Elliot code. *See id.* at *11–12. This claim failed for two reasons: (1) it did not allege an actual controversy; and (2) it did not supply a cause of action independent of the Declaratory Judgment Act. *See id.* As to the former, plaintiffs had not pled a "real and substantial prospect" that defendants' alleged ownership of the Elliot software could impact plaintiffs' legal rights. *See id.* at *11 (quoting *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 298, 405 (S.D.N.Y. 2012)). Apart from Sine's post on the Vander Entities' website claiming to own the Elliot platform, plaintiffs did not allege that defendants had used or infringed their copyright in Elliot platform code, and the AC conceded that defendants could not use its software because they lacked access to Elliot's code. *See id.* As to the second point, the Court held that even if plaintiffs had alleged an actual controversy, they could not bring such a suit under the Copyright Act because they had not registered their copyright in the Elliot software. *See id.*

Because the Court had dismissed all of plaintiffs' federal claims, it declined supplemental jurisdiction over their state-law claims for defamation and tortious interference. *See id.* at *12. The Court also denied plaintiffs' motion for a preliminary injunction barring defendants from using the ELLIOT mark; suggesting ownership, sponsorship, or association with the ELLIOT mark; and claiming ownership of the Elliot platform and underlying software. *See id.* at *12–16. Because the AC did not state a claim, the preliminary-injunction motion based on its claims necessarily failed. *See id.* at *12. In any event, the Court held, plaintiffs' two-and-a-half-year delay in pursuing preliminary relief undermined their claim that, without an injunction, they would suffer irreparable harm. *See id.* at *15. And plaintiffs did not have a good reason for the delay nor did they show why injunctive relief was urgent. *See id.* at *16.

## II.        Applicable Legal Standards

"Ordinarily, under the 'American Rule,' each party must bear its own attorneys' fees."

*Benihana of Tokyo, LLC v. Benihana, Inc.*, No. 14 Civ. 224 (PAE), 2018 WL 3574864, at *5

(S.D.N.Y. July 25, 2018), *aff'd*, 771 F. App'x 71 (2d Cir. 2019) (summary order).  "However,

where there is 'explicit statutory authority,' courts may award attorneys' fees."  *Id.* (quoting

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602–03

(2001)).  The Lanham Act and Copyright Act each authorize fee awards in distinct circumstances.

### A.        Fee Awards Under the Lanham Act

Under the Lanham Act, a fee award is available in "exceptional cases."  15 U.S.C.

1117(a).  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 527 U.S. 545 (2014), the

Supreme Court construed an identically worded provision in the Patent Act.  The Second Circuit

has since adopted that construction as governing fee applications under the Lanham Act.  *See*

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018).  Under

*Octane Fitness*, an "exceptional case" is "one that stands out from others with respect to the

substantive strength of a party's litigating position (considering both the governing law and the

facts of the case) or the unreasonable manner in which the case was litigated."  572 U.S. at 554.

District courts have wide latitude to determine whether a case is exceptional; the inquiry is a

case-by-case exercise that considers the totality of the circumstances.  *Id*.  Courts may consider a

nonexclusive list of factors including "frivolousness, motivation, objective unreasonableness

(both in the factual and legal components of the case) and the need in particular circumstances to

advance considerations of compensation and deterrence."  *Id*. at 554 n.6 (citing *Fogerty v.*

*Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)); *see Manhattan Rev. LLC v. Yun*, 765 F. App'x

574, 578 (2d Cir. 2019) (summary order) (district courts are "encourag[ed]" to apply "the

6

*Forgerty* factors from the Copyright Act context" in exercising discretion as to fee requests under Lanham Act).

Although highly relevant, fraud, bad faith, or willful infringement are no longer required for a fee award under the Lanham Act. *See 4 Pillar Dynasty LLC. v. N.Y. & Co.*, 933 F.3d 202, 215–16 (2d Cir. 2019) (precedents requiring a showing of willfulness have been overtaken by *Octane*). But "although *Octane* reduced the showing required for an award on the ground of objective baselessness, courts continue to hold claims of baselessness to a high bar." *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014). As a result, "most post-*Octane* cases awarding fees continue to involve substantial litigation misconduct." *Hockeyline, Inc. v. STATS LLC,* No. 13 Civ. 1446 (CM), 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017); *see, e.g.*, *Small*, 2014 WL 5463621, at *4 (collecting cases).

## B.      Fee Awards under the Copyright Act

Section 505 of the Copyright Act allows district courts to "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. Section 505 "grants courts wide latitude to award attorney's fees based on the totality of circumstances." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016). "'[S]everal nonexclusive factors' . . . inform a court's fee-shifting decisions: 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* (quoting *Fogerty*, 510 U.S. at 534 n.19). But "such factors may be used only 'so long as [they] are faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 120–21 (2d Cir. 2001) (quoting *Fogerty*, 510 U.S. at 534 n.19).

The objective-reasonableness factor, the Second Circuit has stated, merits "substantial weight." *Id.* at 122. A claim of copyright infringement is considered objectively unreasonable

when it is "clearly without merit or otherwise patently devoid of [a] legal or factual basis."

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96 Civ. 4126

(RWS), 2004 WL 728878, at *3 (S.D.N.Y. April 6, 2004).[3]   But the reasonableness of the

plaintiff's litigation position is only one factor in the analysis.  *Kirtsaeng*, 136 S. Ct. at 1988.

"[A] court may award fees even though the losing party offered reasonable arguments," for

example, to "deter repeated instances of copyright infringement or overaggressive assertions of

copyright claims, again even if the losing position was reasonable."  *Id.* at 1988–89.

## III.     Discussion

### A.     The Application for Fees Under the Lanham Act

Defendants argue that this case is exceptional, warranting a fee award, because plaintiffs'

trademark-infringement claim lacked merit, as reflected in the fact that, given the opportunity to

file a new complaint after the Court dismissed the AC, plaintiffs did not do so.  Def. Fees Mem.

at 4.  Defendants further argue that plaintiffs pursued a preliminary injunction for the improper

purposes of blocking Sine's communications with Hello I Am Elliot's board, and retaliating

against Sine for having subpoenaed Hello I Am Elliot and Villasenor for records and testimony

in Sine's state-court lawsuit against his ex-girlfriend, Kosmides.  *Id.* at 4–7.

The Court is unpersuaded.  Considering the *Fogerty* factors and the litigation as a whole,

this case is not exceptional so as to warrant a fee award.

---

[3] As to the size of a reasonable award, the Second Circuit has set out the framework a court should use, with the goal of determining "what a reasonable, paying client would be willing to pay," given that such a party wishes "to spend the minimum necessary to litigate the case effectively."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008); *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment.").  Because the Court does not award fees here, there is no occasion to review the governing methodology.

***Objective unreasonableness***:  A claim with "no legal or factual support" is objectively

unreasonable.  *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) (summary order);

*see also Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (claim objectively

unreasonable when "clearly without merit or otherwise patently devoid of a legal or factual

basis" (quoting *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL), 2009 WL 935674,

at *3 (S.D.N.Y. Apr. 7, 2009))).  It is not enough, however, for a court merely to have "disagreed

with a plaintiff's position in the underlying litigation." *Creazioni Artistiche Musicali, S.r.l. v.

Carlin Am., Inc.*, No. 14 Civ. 9270 (RJS), 2017 WL 3393850, at *2 (S.D.N.Y. Aug. 4, 2017); *see

also Penguin Books*, 2004 WL 728878, at *3 ("The question is not whether there was a sufficient

basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's

position was so lacking as to render its claim objectively unreasonable." (cleaned up)).

Plaintiffs' trademark-infringement claim, although inadequately pled, was not objectively

unreasonable.  Plaintiffs made a coherent legal argument why registering the ELLIOT mark had

not been necessary to pursue their claim.  The mark, they argued, was arbitrary, in that ELLIOT

did not refer to a real person and had no connection to e-commerce; thus, plaintiffs argued, they

could enforce it without having to plead a secondary meaning.  *See* Dkt. 32 ("Pl. MTD Opp'n")

at 4–7; AC ¶ 33.  The Court was unpersuaded, finding the mark descriptive, and therefore

requiring a pleading of secondary meaning, which plaintiffs had not done.  *See Elliot I*, 2020 WL

3619505 at *8, 10; *see also Einhorn*, 426 F. Supp. 2d at 195 (descriptive marks protectable "only

if they are shown to have acquired secondary meaning to consumers").  The Court noted

decisions holding that "personal names—both surnames and first names—are generally regarded

as descriptive terms which require proof of secondary meaning." *See Elliot I*, 2020 WL 3619505

at *7 (collecting cases).  The Court held that, although the ELLIOT mark did not refer to a real

individual, the mark fell within this line of authority.  *See id.* at *8.

But plaintiffs mustered some support for their claim that the mark was protectable absent

such a showing.  In United States Patent and Trademark Organization ("PTO") records, plaintiffs

found registrations of names such as "ELLIOT" and "ELLIOTT" in other industries.  *See* Pl.

Fees Opp'n at 7–8.  And, as plaintiffs noted in opposing the motion to dismiss, "[r]egistration by

the PTO without proof of secondary meaning creates the presumption that the mark is more than

merely descriptive, and, thus, that the mark is inherently distinctive."  *Lane Cap. Mgmt., Inc. v.*

*Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *see also* Pl. MTD Opp'n at 5 n.24

(citing *Joules Ltd. v. Macy's Merch. Grp.*, 695 F. App'x 633, 638 (2d Cir. 2017)).[4]  Plaintiffs

further noted that the Second Circuit's requirement of a pleading of secondary meaning when a

mark is a name has not been universally adopted—some cases have recognized an exception.

*See* Pl. MTD Opp'n at 6 & n.33 (collecting cases).  To be sure, the Court found that the

exception did not apply, because it related to cases in which the name has acquired a dictionary

definition.  *See Elliot I*, 2020 WL 3619505, at *7 n.6.  But plaintiffs' argument was not devoid of

a legal or factual basis.  It merely was unsuccessful.

Revealing, too, the Court dismissed the AC without prejudice, giving plaintiffs two

weeks to file a second amended complaint, this time pleading a secondary meaning.  *See Elliot I*,

2020 WL 3619505, at *10.  The Court would not have done so had plaintiffs' trademark claim

been beyond repair.  *See Eliya, Inc. v. Steven Madden, Ltd.*, No. 15 Civ. 1272 (DRH) (SIL), 2019

---

[4] Plaintiffs were not entitled to this presumption, however, because their mark, at the time, was unregistered.  *See Elliot I*, 2020 WL 3619505 at *6–7.  On plaintiffs' application, the USPTO has since registered the mark without proof of secondary meaning.  *See* Registration.

WL 5694315, at *5 (E.D.N.Y. Aug. 5, 2019) (dismissal with leave to amend did not imply that

claims were "frivolous or objectively baseless, but rather that while Plaintiff's pleadings were

initially inadequate to state a claim, there remained the possibility that a viable cause of action

may yet exist and be properly pleaded in an amended complaint"), *report and recommendation*

*adopted*, 2019 WL 4593451 (E.D.N.Y. Sept. 23, 2019).

Finally, contrary to defendants' argument, plaintiffs' decision not to file a new amended

complaint does not implicitly concede that their claim was unsalvageable.  Plaintiffs reasonably

explain that, as of July 1, 2020, Hello I Am Elliot ceased operations and was going out of

business.  *See* Pl. Fees Opp'n at 12–13.  In this context, it was unduly costly and not worthwhile

to assemble secondary-meaning evidence so as potentially to revive this litigation.  *See id.* at 13.

The Court therefore finds that plaintiffs' position was not objectively unreasonable.  This

important factor does not favor a fee award.

*Frivolousness*:  A complaint is frivolous "where it lacks an arguable basis either in law

or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Agence Fr. Presse v. Morel*,

No. 10 Civ. 2730 (AJN), 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015) (applying *Neitzke*

standard to assessment of frivolousness under *Fogerty*), *aff'd sub nom. Presse v. Morel*, 645 F.

App'x 86 (2d Cir. 2016) (summary order); *Hallford v. Fox Ent. Grp., Inc.*, 12 Civ. 1806 (WHP),

2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (same).  Although this factor often overlaps

with objective unreasonableness, "[o]bjective unreasonableness is not the same as

frivolousness."  *Magnum Photos Int'l, Inc. v. Houk Gallery, Inc.*, No. 16 Civ. 7030 (VB), 2019

WL 4686498, at *2 (S.D.N.Y. Sept. 26, 2019); *see id.* ("In general, courts appear to treat

frivolousness as a particularly intense form of objective unreasonableness." (cleaned up)); *see*

*also Stephen T. Greenberg, M.D., P.C. v. Perfect Body Image, LLC*, No. 17 Civ. 5807 (SJF)

(SIL), 2020 WL 6146617, at *3 n.6 (E.D.N.Y. Oct. 20, 2020) (collecting cases).  Here, the two

fully overlap, and for the same reasons plaintiffs' trademark claim was not objectively

unreasonable, it was not frivolous.  *See Omega SA v. 375 Canal LLC*, No. 12 Civ. 6979 (PAC),

2019 WL 2442434, at *4 (S.D.N.Y. June 12, 2019) (defendant's decision to go to trial on

trademark-infringement claim not objectively unreasonable or frivolous for same reasons), *aff'd*,

984 F.3d 244 (2d Cir. 2021); *Magnum Photos*, 2019 WL 4686498, at *2 ("[B]oth factors are

often analyzed by inquiring whether there is indisputably absent any factual or legal basis for

plaintiff's claims." (cleaned up)); *see also Creazioni*, 2017 WL 3393850, at *4 (in copyright-

infringement case, "regardless of the exact boundaries of [objective reasonableness and

frivolousness]," court had "little trouble" concluding plaintiff's claim was not frivolous for same

reasons it was not objectively unreasonable); *Agence Fr. Presse*, 2015 WL 13021413, at *5

(same).

     ***Motivation/bad faith***:  A lawsuit driven by an improper motive may be exceptional.  A

plaintiff is "improperly motivated where it asserts claims not because of their inherent merit, but

rather because the party seeks to knowingly gamble on an unreasonable legal theory in order to

achieve a secondary gain." *Agence Fr. Presse*, 2015 WL 13021413, at *5 (cleaned up); *see Pirri

v. Cheek*, --- F. App'x ---, 2021 WL 1081780, at *3 (Fed. Cir. Mar. 22, 2021) (per curiam)

(affirming fee award in patent case where plaintiff's arguments were "objectively unreasonable,

baseless, or frivolous" and often founded on "outlandish allegations based on factual

misrepresentations").  Defendants make two arguments along these lines.

     First, defendants argue that plaintiffs pursued their trademark claim and motion for a

preliminary injunction with the goal of preventing Sine from communicating with Hello I Am

Elliot's board of directors.  *See* Def. Fees Mem. at 5.  That argument is unpersuasive.

Preliminary-injunction applications in trademark-infringement cases are commonplace.  And the

application for preliminary relief here was anything but exceptional.  It was keyed to the scope of

the infringement claim, in that it sought to bar defendants from using the ELLIOT mark;

suggesting ownership, sponsorship, or association with the ELLIOT mark; and claiming

ownership of the Elliot platform and underlying software.  *See Elliot I*, 2020 WL 3619505,

at *12–16.  Requests for such preliminary relief in cases claiming trademark infringement are

familiar.  And contrary to defendants' depiction, the relief plaintiffs sought did not ask explicitly,

or imply an intent, broadly to block communications between Sine and Hello I Am Elliot's

board.

As for the Court's denial of preliminary relief, it reflected only that the infringement

claim on which it was based had been dismissed, and that plaintiffs had failed to adequately

support their claim of irreparable harm, in light of their substantial delay in bringing this action.

The Court did not, however, find or perceive at the time an ulterior motive in the request for

preliminary relief.

Second, defendants posit that plaintiffs brought this suit to retaliate against Sine having

subpoenaed Hello I Am Elliot and Villasenor for documents and testimony in Sine's state-court

action against his ex-girlfriend.  Def. Fees Mem. at 5–6.  Defendants infer this motive because,

when Sine made a similar accusation in his declaration opposing preliminary relief, plaintiffs did

not specifically deny such a motive in their reply.  *Id.*  But plaintiffs' silence on this point was

not an admission.  And Hello I Am Elliot had legitimate business reasons to bring this suit.

On the record of this case, therefore, it is at best conjectural that plaintiffs had an ulterior

motive to bring suit.  "Defendants have offered no evidence to suggest that [Hello I Am Elliot]

sued in bad faith, or, more generally, that [Hello I Am Elliot] brought its claims for any reason

other than enforcing the rights the law presumed its registered marks possessed." *See Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 15 Civ. 6478 (ALC), 2020 WL 1467118, at *4 (S.D.N.Y. Mar. 26, 2020) (quotations and citation omitted).  This case thus contrasts with others found exceptional where the record solidly established plaintiffs' improper motives for initiating a lawsuit.  *See, e.g.*, *Pirri v. Cheek*, No. 19 Civ. 180 (PAE), 2020 WL 2520593, at *12 (S.D.N.Y. May 18, 2020) (awarding attorneys' fees and sanction against attorney in patent case where plaintiff's arguments were "frivolous to the point that the Court could fairly infer bad faith"), *aff'd*, 2021 WL 1081780; *Benihana of Tokyo, LLC*, 2018 WL 3574864, at *11 (awarding attorneys' fees in Lanham Act case where plaintiffs—based on the testimony of their then-attorney—"brought and pursued this case in bad faith with the *admitted* ulterior goal of driving up [defendant's] legal expenditures, all the while engaging in further violative conduct" (emphasis added)).

Defendants next argue that plaintiffs knew the preliminary-injunction motion was a loser because plaintiffs waited 2.5 years to bring it, the implication being that plaintiffs were animated by ulterior designs.  *See* Def. Fees Mem. at 6.  Plaintiffs' unexplained delay in pursuing such relief led the Court to find the irreparable-harm requirement not established.  *See Elliot I*, 2020 WL 3619505, at *15–16.  But this flaw does not prove an improper motivation.  Plaintiffs explained at the time that they had earlier chosen to use their limited resources to grow the ELLIOT brand, rather than on a legal action.  *See id.* at *16.  Although this explanation did not persuade the Court that there was irreparable harm, it does not reflect an improper motive.

Defendants finally state that they "incur[red] enormous legal fees" opposing preliminary relief.  Def. Fees Mem. at 6.  That on its own is not a reason to find the case exceptional.  This unfortunate consequence of the default American Rule is not uncommon.  *See, e.g.*, *Jovani*

*Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011) (defendant's

small litigation budget alone insufficient to justify fees incurred defending against a not

unreasonable copyright claim).

Accordingly, this case is not exceptional. The Court denies defendants' motion for the

fees incurred in defending against the trademark claim and motion for a preliminary injunction.

**B.      The Application for Fees Under the Copyright Act**

Defendants also argue that they are entitled to a fee award under § 505 of the Copyright

Act.[5] As noted, a court considering a prevailing party's such bid is to consider the totality of the

circumstances, including the *Fogerty* factors, with weight given to whether the losing party's

litigation position was objectively unreasonable. *Kirtsaeng*, 136 S. Ct. at 1988. Defendants'

arguments under § 505 merely refer to those made in arguing, unsuccessfully, that the case was

an exceptional one under the Lanham Act. Although the Court need not find that this case rises

to the level of an "exceptional case" to merit a fee award under the Copyright Act, the Court is

again unpersuaded by these arguments. Its assessment of the most pertinent *Fogerty* factors is as

follows.

---

[5] Although neither party raises the issue, the Court notes that plaintiffs brought their copyright claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, which does not contain a provision for a fee award. *See Schell v. OXY USA Inc.*, 814 F.3d 1107, 1127 (10th Cir. 2016) ("We have never recognized § 2202 as an independent basis to award attorneys fees[.]"); *see also Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("[Section 2202] of the Federal [Declaratory Judgment Act] 'does not by itself provide statutory authority to award attorney's fees[.]'") (quoting *Mercantile Nat'l Bank at Dallas v. Bradford Tr. Co.*, 850 F.2d 215, 218 (5th Cir. 1988)). Although the Second Circuit has not addressed the issue, other circuits have held that defendants who have defeated claims under the Declaratory Judgment Act may pursue fees under § 505 where the claims concerned the scope of a copyright. *See Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020). The Court assumes that it has such authority, but, because it denies the fee application, has no occasion to resolve this question.

***Objective unreasonableness***:  Defendants argue that because plaintiffs lacked a copyright

registration when they commenced their action, they lacked a basis to bring a copyright claim.

*See* Def. Fees Mem. at 6; Def. Fees Reply at 2.  But while plaintiffs' claim proved meritless, it

again was not objectively unreasonable.  Plaintiffs recognized, in fact, that they could not bring a

Copyright Act infringement claim "until preregistration or registration of the copyright claim has

been made," 17 U.S.C. § 411(a), and as of time of the AC, plaintiffs had not registered their

copyright in Elliot.  *See Elliot I*, 2020 WL 3619505, at *11.  Consequently, plaintiffs sued under

the Declaratory Judgment Act, seeking to establish their ownership of the copyright in Hello I

Am Elliot's computer software "under an understanding and belief that a copyright registration

was not necessary for an action seeking a declaratory judgment of copyright ownership where

there's no claim of copyright infringement."  Pl. Fees Opp'n. at 11.  Although this approach

presented sleazily to defendants, plaintiffs mustered some authority for it:  In opposing dismissal,

plaintiffs cited two out-of-circuit cases for the proposition that registration was not required to

bring a copyright-based declaratory judgment claim.  *See Elliot I*, 2020 WL 3619505, at *11 n.8;

*see also Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1340 (11th Cir. 2018); *Mercedes Benz,*

*USA, LLC v. Lewis*, Nos. 19-10948, 19-10949, 19-10951, 2019 WL 4302769, at *3–5

(E.D. Mich. Sept. 11, 2019).

To be sure, this Court read those cases clearly to stand for narrower propositions: that

"(1) a plaintiff owner's failure to register her copyright can lead to a dismissal for failure to state

a claim, but not for lack of jurisdiction, *see Fastcase, Inc.*, 907 F.3d at 1341; and (2) an owner's

failure to register her copyright does not prevent an accused infringer from seeking a declaratory

judgment of non-infringement, *Mercedes* [*Benz*], *USA, LLC*, 2019 WL 4302769, at *3."  *Elliot I*,

2020 WL 3619505, at *11 n.8.  Neither case, the Court noted, holds that a plaintiff may bring a

declaratory judgment action for copyright ownership without registering the copyright. *Id.*  But the fact that plaintiffs' theory failed and had tenuous footing in the caselaw did not make it objectively unreasonable. *See Berry v. Deutsche Bank Tr. Co. Am.,* 632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009) ("The mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." (cleaned up)).  Rather, "the inquiry is whether the theory was '*clearly* without merit or otherwise *patently devoid* of legal or factual basis.'" *Agence Fr. Presse*, 2015 WL 13021413, at *3 (quoting *Chivalry Film Prods. v. NBC Universal, Inc.*, 05 Civ. 5627 (GEL), 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007) (emphasis in *Agence Fr. Presse*)). Here, plaintiffs' legal theory, while misguided, had just enough of a legal basis to avoid condemnation as objectively unreasonable.  This factor thus disfavors a fee award.

    ***Compensation and Deterrence***:  In certain copyright cases, a fee award can be necessary "in particular circumstances to advance considerations of compensation and deterrence." *See Fogerty*, 510 U.S. at 534 n.19; *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 45 (S.D.N.Y. 2015) (awarding attorneys' fees to plaintiff where doing so would deter willful infringers from "unjustifiably contest[ing] its liability").  An award can encourage parties to vindicate and protect their legitimate rights and discourage bad actors from infringing copyrights and bringing frivolous and unreasonable claims. *See, e.g.*, *Creazioni*, 2017 WL 3393850, at *5 (citing *Fogerty*, 510 U.S. at 529).  But "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position," even if it has lost in court, "will generally not promote the purposes of the Copyright Act." *Matthew Bender*, 240 F.3d at 122. *But see Kirtsaeng*, 136 S. Ct. at 1989 (fee awards may be appropriate to deter "repeated instances of . . . overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case").

17

This factor does not affirmatively favor a fee award. Although unavailing, plaintiffs'

claim under the Declaratory Judgment Act was not objectively unreasonable. *Cf. Muller v.*

*Twentieth Century Fox Film Corp.*, No. 08 Civ. 2550, 2011 WL 3678712, at *3 (S.D.N.Y.

Aug. 22, 2011) (finding, where claim was objectively unreasonable, Copyright Act's goals were

promoted by deterring similar litigation through a fee award). And this is not a case in which

there has been either bad-faith infringement, *see, e.g.*, Beastie Boys, 112 F. Supp. 3d at 43–45

(awarding attorneys' fees to plaintiff where infringer acted recklessly if not willfully), or a bad-

faith claim of infringement, as defendants have not come forward with persuasive evidence that

plaintiffs, in seeking declaratory relief, acted in bad faith.

Accordingly, a fee award would not further the Copyright Act's goals. Plaintiffs'

investment of likely consequential time and money in pursuing this fruitless litigation by itself

should encourage plaintiffs, and future litigants on notice of this case, to proceed with greater

discipline and more clear-eyed legal analysis before bringing claims anchored, whether formally

or otherwise, in copyright. And defendants, who are not copyright holders, are in the familiar

position of most lawsuit victors under the American Rule—holding a judgment but accountable

for their fees and costs. The purposes of the Copyright Act do not require their compensation.

*See, e.g.*, *Guity v. Santos*, No. 18 Civ. 10387 (PKC), 2020 WL 4340417, at *3 (S.D.N.Y.

July 28, 2020) (denying motion to award attorneys' fees where there was no "untoward behavior

that require[d] deterrence"); *Janik v. SMG Media, Inc.*, No. 16 Civ. 7308 (JGK) (AJP),

2018 WL 345111, at *15 (S.D.N.Y. Jan. 10, 2018) (compensation and deterrence did not justify

fee award where no other factors favored fee award and where plaintiff brought suit in good

faith); *Hallford*, 2013 WL 2124524, at *2 (declining to award fees where doing so could

discourage future plaintiffs from bringing unsuccessful but ultimately not objectively

unreasonable claims); *Jovani Fashion, Ltd.*, 820 F. Supp. 2d at 574 (purpose of Copyright Act

would not be served by deterring a "copyright holder with an objectively reasonable litigation

position" from bringing infringement claims (quoting *Matthew Bender*, 240 F.3d at 122)); *see*

*also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, No. 13 Civ. 831 (GLS),

2020 WL 2104705, at *3 (N.D.N.Y. May 1, 2020) (declining to award fees where, "without a

finding of frivolousness, improper motive, or objective unreasonableness, there is no behavior

for the court to deter").[6]

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for attorneys' fees. The

Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 56.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: March 30, 2021
       New York, New York

---

[6] Plaintiffs separately argue that defendants cannot recover fees because defendants have failed to apportion fees and costs across the trademark and copyright claims. *See* Pl. Fees Opp'n at 15. Because the Court finds that both aspects of the fee application lack merit, it does not have occasion to address this argument.